**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JEWISH WAR VETERANS OF THE UNITED STATES OF AMERICA, INC., RICHARD A. SMITH, MINA SAGHEB, and JUDITH M. COPELAND,

Plaintiffs,

v.

ROBERT M. GATES,
Secretary of Defense, in His Official Capacity,

Defendant.

Case No. 1:07-mc-00220 (JB)
Case No. 1:07-mc-00221 (JB)
Case No. 1:07-mc-00222 (JB)

**REPLY OF CONGRESSMEN DUNCAN HUNTER, DARRELL E. ISSA AND BRIAN P. BILBRAY TO PLAINTIFFS' MEMORANDUM IN RESPONSE TO NOTICE DESCRIBING CERTAIN DOCUMENTS IN MEMBERS' POSSESSION**

Pursuant to this Court's Order of July 31, 2007, Congressmen Duncan Hunter, Darrell Issa and Brian Bilbray filed on August 8, 2007, an index of documents in their possession responsive to specifications 1, 2, 4 and 6 of the subpoenas served upon them. *See* Notice Describing Certain Documents in Members' Possession (Aug. 8, 2007) ("Notice"). On August 13, 2007, the JWV Plaintiffs asserted, not surprisingly, that *all* documents so identified are relevant to their lawsuit against the Secretary of Defense. Plaintiffs' Memorandum in Response to Notice Describing Certain Documents in Members' Possession at 1 (Aug. 13, 2007) ("JWV Plaintiffs' Memorandum").

The Court's July 31 Order directs the JWV Plaintiffs to explain "how the documents [they still seek] are 'relevant' to any claims or defenses in the underlying action." Their failed attempt to do that – their third such attempt to explain in writing why they need to rummage through the private congressional files of three Members of the House – merits the following brief response.

## DISCUSSION

The JWV Plaintiffs *both* challenge the Secretary of Defense's "display" of a cross that has long been part of the Mt. Soledad Veterans Memorial in San Diego, *and* challenge the transfer to the United States of the land on which the memorial is located, a transfer effectuated by the Mt. Soledad Veterans Memorial Preservation Act. Those are two very different claims, and one might have expected that by this time, the JWV Plaintiffs would be able to differentiate between them for purposes of explaining the relevance of the documents they seek. But they do not.

Instead, the JWV Plaintiffs conflate their two claims into one generic, and inaccurate, assertion, off of which all of their "explanations" are then keyed: "[T]he Members played a central role in the federal government's acquisition and display of the Cross . . . ." JWV Plaintiffs' Memorandum at 3. In fact, as the JWV Plaintiffs well know, the three Members have played no role in the cross' actual display. Prior to the passage of the Mt. Soledad Veterans Memorial Preservation Act, the City of San Diego was responsible for the Mt. Soledad Veterans Memorial (of which the cross is a part) and, since the passage of the Act, the Secretary of Defense has been responsible. The JWV Plaintiffs have not explained in any coherent fashion why any of the documents identified in the Notice are in any way relevant to their challenge to *the Secretary's* display of the cross. Indeed, they have not really tried. Whatever the applicable Establishment Clause standard, the JWV Plaintiffs simply cannot justify their efforts to obtain broad and intrusive document discovery from the three Members on the basis of their challenge to the display.[1]

---

[1] We continue to believe, as we have argued elsewhere, that the three-prong *Lemon* test does not apply to the JWV Plaintiffs' challenge to the cross' display. *See* Consolidated Opposition of Congressmen Darrell E. Issa, Brian P. Bilbray and Duncan Hunter to Plaintiffs' Motions to Compel Production of Documents at 6-7 (June 13, 2007) ("Opposition"). However, even if *Lemon* did apply, the JWV Plaintiffs have failed utterly to explain how any of the enumerated documents would be relevant to the purpose or effects of the display (given the Secretary's sole responsibility under the Act for managing and maintaining the Mt. Soledad Veterans Memorial), (continued...)

That leaves the challenge to the Mt. Soledad Veterans Memorial Preservation Act. Leaving aside the fact that we are awaiting a ruling from the federal court in San Diego as to the justiciability of that claim, the JWV Plaintiffs' "explanation" suffers from the following major flaws:

1. The JWV Plaintiffs still can point to no case law which actually holds that a plaintiff in an Establishment Clause case is permitted to rummage through the private congressional files of a Member of Congress just because he sponsored and pushed for passage of a bill. Instead, the JWV Plaintiffs are reduced to relying on sentence fragments, taken out of context, from cases not on point. For example, the JWV Plaintiffs cite *Bonham v. District of Columbia Library Administration*, 989 F.2d 1242 (D.C. Cir. 1993), for the proposition that discovery from legislators is appropriate. JWV Plaintiffs' Memorandum at 3. That is wrong. *Bonham* reversed the district court's dismissal of an Establishment Clause challenge to the District's decision to close the main branch of the D.C. public library on Easter Sunday.[2] The D.C. Circuit held that the dismissal was improper because it occurred before *any* discovery had been taken regarding the purpose of the closing. Accordingly, there was before the Court no issue concerning the appropriate scope of discovery, and the Court's cryptic reference to the courts "generally look[ing] to . . . testimony of parties who participated in the enactment or implementation of the challenged law or practice" to determine legislative purpose, 989 F.2d at 1244-45, cannot be taken as a holding that discovery from legislators is appropriate in all instances. Thus, even if the D.C. Circuit intended to hold that plaintiffs may take discovery directly from the members of a

---

[1](...continued)
or to the question of whether the Secretary has become excessively entangled with religion (given the absence of any indication in the index of any involvement between the Secretary and any religious organizations).

[2] While the case caption refers to the defendant as the "District of Columbia Library Administration," there was no such entity as far as we are aware. Given that the plaintiff in that case was pro se, and that the opinion refers to the District's Board of Library Trustees, 989 F.2d at 1244, it is fair to assume that the Board was in fact the real defendant. *See* D.C. Code, §§ 39-104, -105 (establishing Board and defining its duties).

local library oversight body that has a very small number of members and has both policy-making and executive functions, D.C. Code, § 39-105, that simply has no bearing on the issues before this Court. The Congress of the United States cannot be equated to the Board of Library Trustees.

The JWV Plaintiffs also cite *Epperson v. Arkansas*, 393 U.S. 97 (1968), for the proposition that a court may examine an advertising campaign by a statute's supporters to determine its purpose (presumably suggesting, by analogy, that it is appropriate for the courts to examine the Members' efforts to secure passage of H.R. 5683). JWV Plaintiffs' Memorandum at 3. However, the statute at issue in *Epperson* was adopted by popular initiative. *See Epperson*, 393 U.S. at 109 n.17. Thus, while it may have been appropriate for the courts in that case to consider ads run by members of the public to help ascertain the statute's purpose, *Epperson* has nothing to do with the issue in this case.

Finally, *Staley v. Harris County, Texas*, 461 F.3d 504 (5th Cir. 2006), which the JWV Plaintiffs also cite, JWV Plaintiffs' Memorandum at 3-4, is similarly not on point. *Staley* involved an Establishment Clause challenge to a monument, located on the grounds of a local courthouse, which included a Bible. All decisions about including the Bible with the monument were made by a local judge and his official court reporter. The judge, in other words, was executing executive-type functions. Under those circumstances, the Court saw fit to consider the judge's campaign for office which was "premised . . . on putting Christianity back in government," in order to determine whether the monument had a religious purpose. *Id.* at 514-15. However, *Staley* is self-evidently of no significance here inasmuch as the three Members have acted only in a quintessentially legislative fashion in sponsoring, and pushing for passage of, H.R. 5683.[3]

---

[3] The other new case the JWV Plaintiffs cite, *Tequila Centinela, S.A. v. Bacardi & Co. Ltd.*, 242 F.R.D. 1 (D.D.C. 2007), was a challenge to a decision by the Trademark Trial and Appeal Board. In ruling on a discovery motion filed by one party against the other, the District Court recited a 2000 Advisory Committee Note to Rule 26: "'A variety of types of information not

(continued...)

2. The JWV Plaintiffs' Memorandum is rife with speculation about what the documents identified in the Notice *might* contain, speculation that is either inaccurate, irrelevant or both. For example:

- The JWV Plaintiffs speculate that "the first two documents listed in Rep. Hunter's Specification No. 1 . . . seem likely to contain information about his reaction to the federal court ruling ordering the removal of the Cross, and about steps that he planned to take in response to that ruling." JWV Plaintiffs' Memorandum at 4. In fact, neither of those documents does either of those things. The first document is, as the Notice indicates, merely an inquiry from a reporter. It does not contain any kind of response from Congressman Hunter or his office. The second document is an email from a reporter to a Hunter staffer acknowledging receipt of a letter sent by Congressman Hunter to the President (which the JWV Plaintiffs have). It also does not contain any kind of response from Congressman Hunter or his office.

- The JWV Plaintiffs speculate that "[t]he third document in Rep. Issa's Specification No. 1 . . . appears likely to contain information about [a White House] meeting or about the steps that the Members and the executive branch were planning to take." JWV Plaintiffs' Memorandum at 4. That is also inaccurate. With respect to Mt. Soledad issues, this document – an email from an Issa staffer to a reporter – says only that Issa staffers did not attend a meeting at the White House. It says nothing about a White House meeting or steps that Members and the executive branch were planning to take. (The JWV Plaintiffs, of course, know

---

[3](...continued)
directly pertinent to the incident in suit could be relevant to claims or defenses raised in a given action'. . . . [including] 'other incidents of the same type or [instances] involving the same product.'" 242 F.R.D. at 6-7. That is the aspect of the decision the JWV Plaintiffs cite. JWV Plaintiffs' Memorandum at 5. We fail to see what "other incidents of the same type" and "[other] instances of the same product" have to do with this case. This is not a defective toy tort case; it is a constitutional challenge to a particular piece of legislation. In addition, we note that the same paragraph of the Advisory Committee Note – which appears in a section of the 2000 notes dealing with amendments to Rule 26 designed to involve the courts more actively in curbing overbroad and abusive discovery – states that "[i]n each instance, the determination whether such information is discoverable . . . depends on the circumstances of the pending action."

what steps were taken subsequently. Those are a matter of public record.)

- The JWV Plaintiffs speculate, again inaccurately, that Congressman Bilbray may have spoken to two "religiously based" organizations, citing "Rep. Bilbray Specification No. 4, Documents 4-6." JWV Plaintiffs' Memorandum at 6 and n.6. In fact, the two organizations were not "religiously based." One was a conservative political group and the other was a defense industry professional society. Furthermore, it is not clear why, even if Congressman Bilbray had spoken to a "religiously based" organization, that fact would have any bearing on the issue now before this Court. The Notice makes clear that both speeches took place *after* the Mt. Soledad Veterans Memorial Preservation Act became law so they can have no bearing on the purpose of the legislation, even assuming Congressman Bilbray addressed that topic. *See Edwards v. Aguillard*, 482 U.S. 578, 596 n.19 (1987).[4]

- Finally, the JWV Plaintiffs assert that "Rep. Hunter Specification No. 6, Documents 3-6, 8" – documents which deal with DoD meetings that occurred after passage of the Act – must be relevant because it is "likely [that they] contain information about how [DoD] intends to manage and display the Cross, and could potentially explain [DoD's] plans for allowing religious ceremonies at the Cross." JWV Plaintiffs' Memorandum at 7 and n.7. This is also not accurate. The documents primarily reflect Congressman Hunter's staff's efforts to *schedule* meetings with DoD, as the index indicates. The only substantive matters mentioned are, as the index also indicates, DoD's interest in transferring the property to the Navy and its need to develop an MOU, as required by the Act. The JWV Plaintiffs have not even attempted to suggest that either of those matters is relevant.

3. The JWV Plaintiffs' argument turns largely on the breathtakingly unlimited scope the JWV Plaintiffs ask this Court to bestow on the words "historical context" and "specific sequence

---

[4] The JWV Plaintiffs assert that speeches to "religiously based" organizations by Members constitute evidence of the religious effects of "the federal government's efforts" here. JWV Plaintiffs' Memorandum at 6. The only "efforts" at issue here are the Act itself and the cross' display, and we cannot fathom how a Member speech to a "religiously based" organization – even if one had taken place – could possibly bear on whether either of those things had "an impermissible sectarian effect." *Id.*

of events." JWV Plaintiffs' Memorandum at 3. Indeed, if their pleading makes anything clear, it is that the JWV Plaintiffs contemplate no limits to the scope of discovery that they believe can be justified on the basis of the words "historical context" and "specific sequence of events." They are, in other words, urging this Court to create a precedent that has very disturbing and far-reaching implications.

4. Ultimately, the JWV Plaintiffs' effort to explain the supposed relevance to their challenge to the Act of private Member congressional files founders on one simple fact: the subjective motivations of the three Members – which, when all is said is done, is what the JWV Plaintiffs are really after – is not the same thing as the purpose of the legislation. *See Bd. of Educ. of Westside Cmty. Sch. v. Mergens*, 496 U.S. 226, 249 (1990) ("[W]hat is relevant is the legislative *purpose* of the statute, not the possibly religious *motives* of the legislators who enacted the law.") (emphasis in original); Opposition at 10-14. In other words, even if the three Members were religiously motivated when they introduced H.R. 5683 and pushed for its passage, and even if all the documents identified in the index reflected that – which, of course, they do not – it simply would not matter. It is the purpose of the Mt. Soledad Veterans Memorial Preservation Act itself that matters, and that turns on objective factors. *Id.* at 11.

Respectfully submitted,

GERALDINE R. GENNET, General Counsel
s/Kerry W. Kircher
KERRY W. KIRCHER, Deputy General Counsel
CHRISTINE DAVENPORT, Assistant Counsel
JOHN FILAMOR, Assistant Counsel

Office of General Counsel
U.S. House of Representatives
219 Cannon House Office Building
Washington, D.C. 20515
202/225-9700 (telephone)
E-mail: kerry.kircher@mail.house.gov

Counsel for Congressmen Duncan Hunter, Darrell E. Issa and Brian P. Bilbray

August 16, 2007

**CERTIFICATE OF SERVICE**

I certify that on August 16, 2007, I served the foregoing Reply of Congressmen Duncan Hunter, Darrell E. Issa and Brian P. Bilbray to Plaintiffs' Memorandum in Response to Notice Describing Certain Documents in Members' Possession through the electronic case filing system, and by .pdf email on the following:

Jonathan H Siegelbaum, Esq.
Wilmer Cutler Pickering Hale and Dorr
1875 Pennsylvania Ave., N.W.
Washington, D.C. 20006
Email: jonathan.siegelbaum@wilmerhale.com

Ryan Nelson
U.S. Department of Justice, ENRD
Natural Resources Section
601 D Street, NW
P.O. Box 663
Washington, D.C. 20004-0663
Email: ryan.nelson@usdoj.gov

Heide Herrmann
U.S. Department of Justice, ENRD
Natural Resources Section
601 D Street, NW
P.O. Box 663
Washington, D.C. 20044-0663
Email: Heide.Herrmann@usdoj.gov

s/Kerry W. Kircher
Kerry W. Kircher
E-mail: kerry.kircher@mail.house.gov